UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
VICTOR CAMARA, ROBERTA PEREZ, ANDREW PABON

                      Plaintiffs,

    -against-

THE CITY OF NEW YORK, POLICE OFFICER
EVENS PIERRELOUIS and
and POLICE OFFICERS JOHN DOES # 1- #6 and
POLICE OFFICER JANE DOE #1, the names being fictitious and presently
unknown, in their individual and official capacities as employees
of the City of New York Police Department

                      Defendants.
-----------------------------------------------------------X

**COMPLAINT**

**JURY TRIAL DEMANDED**

CV12-1587

WEINSTEIN, J.

GO, M.J.

FILED
CLERK
2012 APR -2 PM 2:53
U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

The Plaintiffs, Victor Camara, Roberta Perez and Andrew Pabon, by their attorney, Paul V. Prestia, Esq., of The Prestia Law Firm, P.L.L.C, alleges the following, upon information and belief for this Complaint:

## NATURE OF THE ACTION

1.    This is a civil rights action for money damages brought pursuant to 42 U.S.C. §§ 1983, and 1988, the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, Article I, Sections 6, 11, and 12 of the Constitution of the State of New York, and the common law of the State of New York, against the City of New York, and against Police Officer Evens Pierrelouis and Police Officers John Does # 1-#6 and Police Officer Jane Doe #1, police officers of the City of New York, in their individual and official capacities. Plaintiffs seek compensatory and punitive damages, affirmative and equitable relief, an award of attorneys' fees and costs, and such other relief as this Court deems equitable and just.

2

## JURISDICTION

2. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343 (3) and (4). Plaintiffs also assert jurisdiction over the City of New York under 28 U.S.C. §1331 and §1367. Plaintiff requests that this Court exercise pendent jurisdiction over those state law claims arising out of the same common nucleus of operative facts as Plaintiffs' federal claims.

## VENUE

3. Under 28 U.S.C. § 1391(b), venue is proper in the Eastern District of New York because the events forming the basis of Plaintiffs' Complaint occurred in that District.

## NOTICE OF CLAIM

4. On August 5, 2011, Plaintiffs Camara and Perez, filed a Notice of Claim upon Defendant City of New York, by delivering copies thereof to the person designated by law as a person to whom such claim may be served.

5. On August 26, 2011, Plaintiff Pabon filed a Notice of Claim upon Defendant City of New York, by delivering copies thereof to the person designated by law as a person to whom such claim may be served.

6. The Notice of Claim was in writing, sworn to by Plaintiffs, containing the names and addresses of the Plaintiffs, and the name and address of Plaintiffs' attorney.

7. The Notice of Claim set out the nature of the claim, the time when, the place where, and manner by which the claim arose, and the damages and injuries claimed to have been sustained by Plaintiffs.

8. The City of New York has failed to adjust the claims within the statutory time period.

9. This action is being commenced within one year and ninety days after the happening of the event upon which the claims are based.

10. Plaintiffs caused the Notice of Claim to be served upon Defendant the City of New York. A 50-H Hearing of Plaintiffs Camara and Perez were conducted on November 30, 2011. A 50-H hearing of Plaintiff Pabon was conducted on October 20, 2011.

## PARTIES

11. Plaintiffs Camara, Perez and Pabon, are citizens of the United States and were, at all times relevant hereto, residents of the State of New York, Kings County.

12. Defendant Police Officers Pierrelouis and John Doe # 1 -#6 and Jane Doe #1, were at all times relevant to this complaint duly appointed and acting officers of the Police Department of the City of New York, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York.

13. Defendant City of New York is a Municipal Corporation duly incorporated and existing pursuant to the laws of the State of New York, pursuant to Section 431 of its Charter. The City of New York has established and maintains a Police Department as a constituent department or agency of the defendant.

14. At all relevant times, the City of New York and its Police Department employed all of the defendants more fully identified below.

15. At all relevant times, Defendant Police Officer Pierrelouis was a duly appointed and acting Police Officer of the New York City Police Department, and was at all relevant times on duty on July 24, 2011.

16. At all relevant times, Defendant Police Officer Pierrelouis was acting under the color of state law.

17. At all relevant times, Defendant Police Officer Pierrelouis was an agent, servant and employee acting within the scope of his employment by Defendant City of New York.

18. At all relevant times the Defendant Police Officers John Doe # 1-6 and Police Officer Jane Doe #1 were duly appointed and acting Police Officers of the New York City Police Department and were at all relevant times on duty on July 24, 2011.

19. At all relevant times, Defendants Police Officers John Doe # 1-6 and Police Officer Jane Doe #1 were acting under the color of state law.

20. At all relevant times, Defendants Police Officers John Doe # 1-6 and Police Officer Jane Doe #1 were agents, servants and employees acting within the scope of their employment by defendant City of New York.

## FACTS

21. On July 24, 2011, the Plaintiffs, Victor Camara, Roberta Perez, Andrew Pabon (hereinafter, "Camara", "Perez" and "Pabon", respectively), were attending a birthday party for Perez.

22. Perez had rented a 'party bus' for her and her friends that evening to chauffeur them around the city.

23. At approximately 12:30 a.m. that morning the bus had taken the group of passengers to the vicinity of Canarsie Piers, Brooklyn, NY.

24. At the pier, attendees on the bus began exiting the bus. At or about that time, one passenger, Juanita Dejesus, tripped while getting off the bus and sustained an injury to her ankle.

25. Emergency Medical Services (EMS) were called and arrived to tend to Ms. Dejesus. EMS placed Ms. Dejesus in the EMS vehicle. Ms. Dejesus was in pain and asked Perez to accompany her into said EMS van. Perez entered the EMS vehicle with Ms. Dejesus.

26. Camara and Pabon were standing outside the van with other people from the party.

27. Inside the EMS vehicle, Perez disagreed with EMS personnel as to how to stabilize Ms. Dejesus' injury. Perez was told by an EMS worker to leave the vehicle. Said EMS worker called 911 and prevented Perez from leaving by closing the vehicle doors.

28. Police Officers arrived at the scene. Defendant Officers Pierrelouis and John Doe #1 entered the EMS vehicle. After a brief conversation with Perez, Defendant Officer Pierrelouis began choking, Perez, pulling her hair and punching her about the head.

29. Camara peered into the EMS vehicle to ascertain what was happening. When Camara began to protest treatment of Perez, Defendant Officer Pierrelouis punched Camara in the face. Camara was startled by the punch and sought assistance from other police officers.

30. Perez was dragged out of the EMS van by her hair and handcuffed by Defendant Officer Pierrelouis.

31. Perez suffered pain about her head, hair, neck and body

32. Plaintiff Pabon implored Defendant Officers PierreLouis and John Doe #1 to, " Hold On", when Defendant Police Officer John Doe #1 maced Pabon in the face.

33. Plaintiff Pabon was punched in the head, and struck with a baton on his legs and back by Defendant Police Officers John Doe #1-#3.

34. Plaintiff Pabon was handcuffed.

35. Plaintiff Pabon suffered pain about his head, back and right leg.

36. Defendant Officer Pierrelouis exited the van and chased Camara with his gun drawn. Camara started running away from Defendant Officer Pierrelouis.

37. Other police officers who responded to the scene joined in the chase of Camara.

38. Camara was tackled to the ground by Defendant Officer Jane Doe #1.

39. Defendant officers John Doe #4- #6 and Defendant Officer Pierrelouis jumped on top of/ stood over Camara as he lay on the ground.

40. Defendant Officer Pierrelouis struck Camara with his nightstick. Defendant Officers John Does #4-#6 then joined Defendant Officer Pierrlouis in hitting Plaintiff with their nightsticks. Plaintiff was stuck several times by said nightsticks, on or about his head, his back, his sides, and his arms and legs. Camara was also tasered as well by one of the Defendant Officers.

41. Camara was bleeding about the head. Camara suffered pain to his head, back, legs, hand and body.

42. Camara was handcuffed behind his back.

43. Camara, Perez and Pabon were placed in a patrol car, and taken to the 69th precinct for processing.

44. Upon arriving at the 69th Precinct, Camara's head was bleeding. Camara requested medical attention and was taken to Brookdale Hospital.

45. At Brookdale Hospital, Camara had an x-ray taken of his head and back. Camara received twelve staples to cover wounds to the left side of his head. Camara also was diagnosed with internal bleeding as there was blood in his urine. Camara was administered painkillers and his head and left hand were bandaged.

46. Camara was then returned to the 69th Precinct. At approximately 11:00 a.m. on July 24, 2011, Plaintiff was brought to Central Booking, Kings County.

47. On July 24, 2011, Perez and Pabon were brought to Central Booking, Kings County.

48. On July 25, 2011 at approximately 12:30 a.m., Perez was arraigned in Kings County Criminal Court and charged with Obstructing Governmental Administration and other related charges.

49. Perez was released on her own recognizance.

50. On July 24, 2011, at approximately 12:00 p.m., Camara and Pabon were arraigned in Kings County Criminal Court and charged with Obstructing Governmental Administration in the Second Degree, Resisting Arrest and Disorderly Conduct.

51. Camara was released on his own recognizance.

52. Pabon received an Adjournment in Contemplation of Dismissal (ACD) at his arraignment.

53. On July 25, 2011, following his release, Pabon was still experiencing pain in his back, head and right leg. Pabon sought treatment at Elmhurst Hospital.

54. On July 25, 2011, in the afternoon, Camara was still experiencing pain about his body, bleeding from his head, and dizziness. Camara sought for follow-up treatment at Brookdale Hospital.

55. Approximately four days after his release, Camara went to Woodhull Hospital as he was experiencing back pain and continued bleeding in his urine as a result of this incident.

56. Camara went for follow-up visit to Brookdale Hospital approximately a week after the incident to have staples removed from his head.

57. Camara appeared in Kings County Criminal Court on September 22, 2011, October 6, 2011 and November 1, 2011. On November 1, 2011, Camara's criminal case was dismissed by the Kings County District Attorney's Office.

58. Perez appeared in Kings County Criminal Court on October 6, 2011 and November 1, 2011. On November 1, 2011, the Perez's criminal case was dismissed by the Kings County District Attorney's Office.

59. At some point after his arrest, Camara and Perez filed a report with the Internal Affairs Bureau (IAB) of the NYPD and were interviewed pursuant to an IAB investigation. Said investigation is pending at this time.

60. As a direct and proximate result of the malicious and outrageous conduct of Defendant Police Officer Pierrelouis and Defendant Police Officers John Doe # 1 - #6 and Defendant Police Officer Jane Doe #1 as set forth above, Camara suffered severe injuries and damages including, extreme pain to the head and back, causing plaintiff to

suffer from migraines and back pain, internal bleeding, bruising and pain about his legs, hand and body, emotional trauma, harm and distress, mental anguish, fear, pain and suffering. The full extent of the injuries and damages suffered by Camara has yet to be determined.

61. As a direct and proximate result of the malicious and outrageous conduct of Defendant Police Officer Pierrelouis and Defendants Police Officers Doe # 1 - #6 and Defendant Police Officer Jane Doe #1 as set forth above, Pabon suffered severe injuries and damages including, extreme pain to his back and legs, causing Pabon to suffer pain about his leg and back, emotional trauma, harm and distress, mental anguish, fear, pain and suffering. The full extent of the injuries and damages suffered by Plaintiff Pabon has yet to be determined.

62. As a direct and proximate result of the malicious and outrageous conduct of Defendant Police Officer Pierrelouis and Defendants Police Officers Doe # 1 - #6 and Defendant Police Officer Jane Doe #1 as set forth above, Perez suffered severe injuries and damages including, contusions and bruising to the head, causing Perez to suffer pain to her head, hair and body, emotional trauma, harm and distress, mental anguish, fear, pain and suffering. The full extent of the injuries and damages suffered by Perez has yet to be determined.

## FIRST CAUSE OF ACTION.

63. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 62 of this complaint as fully set forth herein.

64. The acts and negligence of the Defendant Officers, committed under color of law and under their authority as City of New York police officers, in falsely arresting,

unreasonable search and seizure of his person, to equal protection of the laws, and to not suffer deprivation of his liberty without due process of law, as guaranteed under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, and in violation of 42 U.S.C. § 1983.

65. As a consequence thereof, Plaintiffs claim damages under 42 U.S.C. § 1983 for the above-referenced injuries.

## SECOND CAUSE OF ACTION

66. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 62 of this complaint as if fully set forth herein.

67. On information and belief, prior to and including July 24, 2011, the City of New York developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in the City of New York, which caused the violation of Plaintiff's rights.

68. On information and belief, it was the policy and/or custom of the City of New York to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated by the City of New York.

69. On information and belief, it was the policy and/or custom of the City of New York and its Police Department to inadequately screen, hire, train, supervise and discipline its police officers, including the defendant officers, for their propensity for violence, excessive force and restraint, and for their failure to protect citizens from unconstitutional conduct of other police officers, thereby permitting and allowing the defendant officers to be in a position to assault, unlawfully restrain, falsely arrest, and

unlawfully imprison Plaintiffs and otherwise cause him injury and violate his state and federal constitutional rights.

70. On information and belief, the defendant officers have been the subject of prior civilian and departmental complaints that put, or should have put, the defendant City of New York and its Police Department on notice that the defendant officers were likely to engage in conduct that would violate the civil and constitutional rights of the public, such as the conduct complained of by the Plaintiffs herein. Furthermore, the City of New York and its Police Department did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

71. As a result of the above described policies and customs, police officers of the City of New York, including the defendant officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

72. The above described policies and customs demonstrated a deliberate indifference on the part of the policymakers of the City of New York to the state and federal constitutional rights of persons within the City, and were the cause of the violations of Plaintiffs' rights guaranteed under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, and under 42 U.S.C. § 1983.

73. The conduct and negligence of the defendant City of New York and its Police Department were the direct and proximate cause of the injuries to Plaintiffs.

74. As a consequence thereof, Plaintiffs have been injured and claims damages under 42 U.S.C. § 1983 for the aforesaid injuries.

### THIRD CAUSE OF ACTION

75. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 62 of this complaint as if fully set forth herein.

76. The acts of the Defendants, acting under color of law, in falsely arresting, physically assaulting, verbally abusing, seizing and imprisoning Plaintiffs were done intentionally, maliciously, unlawfully and/or with a reckless disregard for the natural and probable consequences to Plaintiffs, and were designed to and did cause specific and serious bodily injury, emotional harm and distress, mental anguish, fear, pain and suffering to Plaintiffs in violation of their rights to be free from unreasonable search and seizure, to equal protection of the laws, and to not be deprived of his liberty without due process of law, as guaranteed by Article I, Sections 6, 11, and 12 of the Constitution of the State of New York.

77. As a consequence thereof, Plaintiffs have been injured and claims damages for the aforesaid injuries.

### FOURTH CAUSE OF ACTION

78. Plaintiffs incorporates by reference the allegations set forth in Paragraphs 1 through 62 of this complaint as if fully set forth herein.

79. The conduct of the Defendants, acting under color of law, in falsely arresting, physically assaulting, unlawfully seizing, falsely imprisoning, and falsely charging and prosecuting Plaintiffs constituted the torts of assault, battery, trespass upon the persons of Victor Camara, Roberta Perez and Andrew Pabon, false arrest, false imprisonment, malicious prosecution, negligence, and intentional infliction of emotional distress under the laws of the State of New York.

80. As a consequence thereof, Plaintiffs have been injured and claims damages for the aforesaid injuries.

## FIFTH CAUSE OF ACTION

81. Plaintiffs incorporates by reference the allegations set forth in Paragraphs 1 through 62 of this complaint as if fully set forth herein.

82. The failure of Defendant City of New York and the New York City Police Department to properly hire, screen, supervise and train Defendants Officers Pierrelouis and Officers John Does #1- #6 and Jane Doe #1 constituted the tort of negligence.

83. As a consequence thereof, Plaintiffs have been injured and claim damages for the aforesaid injuries.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that judgment be entered as follows:

1. A declaration that the defendants violated Plaintiffs rights to equal protection of the laws, to be free from unreasonable search and seizure, to be free from excessive and unreasonable force, and to be free from the deprivation of liberty without due process of law as guaranteed under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution;

2. A declaration that the defendants violated Plaintiffs' rights to equal protection of the laws, to be free from unreasonable search and seizure, to be free from excessive and unreasonable force, and to be free from the deprivation of liberty without due process of law as guaranteed under Article I, Sections 6, 11 and 12 of the New York State Constitution;

3. Compensatory damages against all defendants in an amount to be determined by a jury;

4. By reason of the wanton, willful and malicious character of the conduct complained of herein, exemplary and punitive damages against all defendants in an amount to be fixed at trial;

5. An award to Plaintiffs of the costs and disbursements herein;

6. An award of attorney's fees under 42 U.S.C. § 1988;

7. Such other and further relief as this Court may deem just and proper.

Dated: March 28, 2012
New York, New York

PAUL V. PRESTIA, ESQ.
The Prestia Law Firm, P.L.L.C.
65 Broadway, Suite 716
New York, New York 10006
(212) 430-6313
Attorney for Plaintiffs